Kevin S. Johnson, Esq.
HAMRA LAW GROUP, P.C.
1 Linden Place, Suite 207
Great Neck, NY 11021
(646) 590 – 0571
kjohnson@hamralawgroup.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------X
ANTHONY WILLS, JR., on his own behalf and on behalf of
others similarly situated,

Case No.

                              Plaintiff,

**CLASS ACTION**
**COMPLAINT**

                  v.

JURY TRIAL DEMANDED

CEZAR HAXHARI, CEZAR H. LLC, MGNY CONSULTING
CORP., THE CITY OF NEW YORK,  NEW YORK CITY
DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT, NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION and NEW YORK CITY HOUSING
DEVELOPMENT CORPORATION,

                        Defendants.
-------------------------------------------------------------------------------X

Plaintiff, ANTHONY WILLS, JR. (hereinafter "Plaintiff" or "WILLS"), on his own behalf

and on behalf of others similarly situated (hereinafter "class/collective members," "class members,"

or "collective members"), through his attorneys, HAMRA LAW GROUP, P.C., and the undersigned,

brings as and allege the following in Complaint of the above-named Defendants:

**NATURE OF THE ACTION**

1.     Plaintiff ANTHONY WILLS, JR. (hereinafter "Plaintiff" or "Plaintiff WILLS JR.")

sought to become a tenant at the premises located at 2311 Andrews Avenue N., Bronx, New York

10468 (hereinafter the "Premises") through the New York City Housing Lottery. The Premises, at all

relevant times, was and is owned and operated by the Defendants CEZAR H LLC, of which

Defendant CEZAR HAXHARI is the sole and managing member (hereinafter, collectively, the "Landlord").

2.      Plaintiff is one of an estimated 129,660 people living with a positive HIV diagnosis in New York City, as of December 31, 2021 (up from 100,712 at the same point in 2020). Like approximately 44% of those people, Plaintiff is African American. According to the date pairing with approximately 10% who are unemployed. Pointedly, 21% of those living with HIV live in unstable housing.[1]

3.      Human Immunodeficiency Virus ("HIV"), attacks the carrier's immune system making the individual diagnosed unable to ward off infection and disease as would a healthy individual without the virus or other immunocompromised maladies. The Courts of this State and this District have found that "People living with HIV and AIDS develop numerous illnesses and physical condition not found in the general population, and experience manifestations of common illnesses that are much more aggressive, recurrent, and difficult to treat. Infections and cancers spread rapidly in a person whose immune system has been compromised . . . Illnesses that are not lethal to the general population can kill an HIV-infected person." Henriettta D. v. Giuliani, 119 F. Supp.2d 181, 185 (E.D.N.Y. 2000), aff'd, 331 F. 3d 261 (2d Cir. 2003), cert. denied, 541 U.S. 936 (2004).

4.      It has been said by nonprofits, NGO's, government agencies, and many public health experts that "housing is healthcare" and "any practical and comprehensive understanding of health necessarily includes housing. . . ." quoting, "Housing is Health Care" John Lozier, National Health

---

[1] See, NYC Health Department "HIV in NYC: Statistics and Reports" at https://www.nyc.gov/site/doh/data-sets/hiv-aids-surveillance-and-epidemiology-reports.page#surv; NYC HIV Surveillance Annual Report 2021 at https://www.nyc.gov/assets/doh/downloads/pdf/dires/hiv-surveillance-annualreport-2021.pdf; NYC HIV Surveillance 2021 Tables at https://www.nyc.gov/assets/doh/downloads/pdf/ah/surveillance2021-tables-all.pdf; See also, compiling of HIV statistics by AIDSVu, a joint venture between Emory University's Rollins School of Public Health and Gilead Sciences, Inc. (a pharmaceutical company known for their safe and effective treatment for those living with HIV), https://aidsvu.org/local-data/united-states/northeast/new-york/new-york-county/new-york-city/#:~:text=In%202020%2C%20there%20were%20100%2C712,were%20newly%20diagnosed%20with%20HIV.

Care for the Homeless Council, https://nhchc.org/wp-content/uploads/2019/08/Housing-is-Health-Care.pdf (August 2019).

5.    A number of those individuals, like Plaintiff, are recipients of public assistance from the HIV/AIDS Services Administration "HASA"), a division and department of Defendant CITY. These benefits include housing subsidies or vouchers, which cover all or some of a recipient's housing costs, including rent and utilities. According to the CITY's own data, the HASA program received approximately 4,180 applications in 2020, 3,840 in 2021, and as of March 31, 2023, there were 1,403 applications. As of March 31, 2023 the program was servicing 32,553 cases of HASA recipients.[2] HASA was created in 1985 as a subdivision of Defendant NEW YORK CITY HUMAN RESOURCES ADMINISTRATION (hereinafter "HRA" or "NYC HRA").

6.    These vouchers are administered through the Defendant HRA, through caseworkers who work directly with voucher recipients.

7.    The Landlord participated in the New York City affordable housing lottery system run by Defendant CITY OF NEW YORK (hereinafter "CITY"), thought the Defendants NEW YORK CITY DEPARTMENT OF HOUSING PRESERVATION AND DEVELOPMENT (hereinafter "NYC HPD" or "HPD") and Defendant HRA (hereinafter, collectively, all three shall be referred to, when relevant, as "CITY Defendants") and the NEW YORK CITY HOUSING DEVELOPMENT CORPORATION (hereinafter "HDC" or "NYC HDC").

8.    Defendant, MGNY CONSULTING CORP. (hereinafter the "MGNY"), contracted and was and is under a mandate from the Defendants CITY and HPD (collectively, the "CITY Defendants") and from Defendant HDC, from March 2019 up through and including the present day (hereinafter the "Relevant Time Period") to work with the Landlord and other similarly situated

---

[2] See HIV/AIDS Services Administration Monthly Report, https://data.cityofnewyork.us/Social-Services/HASA-Facts/wjvv-6yxq/data.

property owners in New York City that participated in the CITY Defendants' lottery system to intake applicants, process applicants materials, liaison between property owners (i.e. Defendant Landlord), and generally MGNY the lottery system under the legislative and executive mandates in the statutes and regulations establishing the affordable housing lottery system in New York City.

9.      Plaintiff's HASA voucher was sufficient to cover the rent ($1,815.00) at the Premises, as shown on the housing lottery's website. Plaintiff timely submitted his application for the Premises through the Defendant MGNY's website.

10.     On or about November 28, 2022, the Plaintiff received a response from the Defendant Landlord and CITY Defendants, through Defendant MGNY, which denied his application indicating that the "Reason for this determination" is that "HASA isn't available in this project."

11.     No other reason was given in this initial denial. Such denial obviously harms Plaintiff specifically and the implied practice of Defendants harms those prospective class/collective members living with HIV in the City of New York and using housing vouchers, HASA vouchers in particular.

12.     Plaintiff now brings the class and/or collective action, on behalf of himself others similarly situated, for Defendants' unlawful practices and procedures, in violation of the provisions of the Fair Housing Act ("FHA"), which include discrimination based on disability (HIV+); discrimination based on protected status (ID STUFF), and refusal to provide housing based on protected status. Plaintiff seeks injunctive relief for himself, and those similarly situated, placing him and class/collective members into housing, and forcing the Defendants to properly train and educate staff, contractors, and agencies in antidiscrimination and antibias educations. Additionally, Plaintiff seeks compensatory damages, actual damages, punitive damages, costs, attorneys' fees, and such further relief as the Court may deem just and proper for himself and class/collective members.

13.     Under the Court's supplemental jurisdiction, Plaintiff alleges violations under the New York City Human Right Law ("NYCHRL") for refusal to accept legally valid housing voucher to pay

for housing, discrimination based upon disability (HIV+) discrimination based upon source of in income (HASA vouchers); and discrimination based upon a protected class. Plaintiff also brings New York common law negligence actions for negligent hiring, training, and retention by the Defendants. Plaintiff similarly seeks monetary compensation for pain and suffering and mental anguish, compensatory damages, actual damages, punitive damages, costs attorneys' fees, and such further relief as the Court may deem just and proper for himself and class/collective members.

## **PARTIES**

14.    Plaintiff, ANTHONY WILLS, JR., is a 46-year-old queer man living with  and being disabled by HIV who until March 17, 2023, resided at the Housing Works – Keith D. Cylar Community Health Center, at 743-749 East 9th Street, New York, New York 10009.

15.    Plaintiff's former residence is temporary housing, specifically designed for Plaintiff and those like him who are seeking permanent housing in the City of New York. He resided there for approximately two years.

16.    Plaintiff has been a recipient of HIV/AIDS Services Administration ("HASA") public benefits since June 2021, and uses a HASA housing subsidy to pay rent, commonly referred to as vouchers (hereinafter "HASA vouchers"). Plaintiff is without any other means by which to pay for permanent housing, being unemployed and lacking a college degree.

17.    Defendant CEZAR H LLC ("Landlord") is the owner of the aforesaid Premises, located in Bronx County in the City and State of New York.

18.    At all relevant times, the Landlord was and still is a domestic Limited Liability Company organized and existing by virtue of the laws of the State of New York, having its place of business in the County of Bronx, City and State of New York.

19.    At all relevant times, Landlord was and still is the owner and/or operator of the

Premises.

20.    At all relevant times, Landlord was and still is the manager of the Premises.

21.    At all relevant times, Landlord maintained its place of business at 963 Brady Avenue, Bronx, New York 10462.

22.    At all relevant times, Landlord was and still is operating as and/or doing business as "Cezar H LLC."

23.    Defendant, MGNY CONSULTING CORP. ("MGNY"), was and is a domestic Business Corporation organized and existing by virtue of the laws of the State of New York, having its place of business in the City, County, and State of New York.

24.    At all relevant times, MGNY was and still is operating as and/or doing business as "MGNY Consulting Corp."

25.    At all relevant times, the MGNY maintained its primary place of business at 109 East 9th Street, Ground Floor, New York, New York 10003.

26.    At all relevant times, Landlord and MGNY was and still is the responsible authority for renting living spaces in the Premises; for reviewing potential tenants' credentials; for interviewing potential tenants; maintain and repairing the premises; determining the advertising of the premises; and preparing all relevant contracts for the Landlord and potential tenants, Plaintiff specifically, to enter into at the time of renting an apartment within the Premises.

27.    At all relevant times, Defendant MGNY managed, marketed, and administered the Premises through the New York City housing lottery, administered on the public side by the CITY Defendants and Defendant HDC.

28.    At all relevant times, the Landlord was aware of the Plaintiff's HIV diagnosis and concurrent disabilities therefrom, through the Plaintiff's revealing of his HASA voucher.

29.    At all relevant times, the MGNY was aware of the Plaintiff's HIV diagnosis and

concurrent disabilities therefrom, through the Plaintiff's revealing of his HASA voucher.

30.    At all relevant times, Defendant CITY was a municipal corporation formed by and under the laws of New York State, having general counsel offices and service via Corporation Counsel at 100 Church Street, New York, NY 10007.

31.    At all relevant times, the Defendant NYC HRA was and still is a division, agency, extension, and governmental subdivision of Defendant CITY.

32.    At all relevant times, the Defendant HRA maintained its principal place of business at Gramercy Center #14, 109 East 16th Street, New York, NY 10003.

33.    At all relevant times, the Defendant HRA did administer, approve, issue, pay, and otherwise provide for the aforesaid HASA vouchers and other relevant public assistance programs in the City of New York, on behalf of Defendant CITY.

34.    At all relevant times, the Defendant NYC HPD was and still is a division, agency, extension, and governmental subdivision of Defendant CITY existing by virtue of the laws of the State of New York.

35.    At all relevant times, the NYC HPD maintained its principal place of business at 100 Gold Street, New York, New York 10038.

36.    Defendant NYC HDC is a non-profit corporation that develops affordable housing in the City.

37.    Defendant NYC HDC maintained its principal place of business at 110 William Street, New York, NY 10038.

38.    Defendant NYC HDC provides on their website that landowners constructing affordable housing, as is the Landlord, and designated marketing agents, as is Defendant MGNY, "are required to adhere to the marketing and tenant selection policies and procedures."

39.    At all relevant times, the CITY Defendants and Defendant HDC were in charge of

hiring, training, screening, and retaining developers, such as Defendant Landlord, and marketing agents, such as Defendant MGNY, such that those parties complied with all Federal housing and disability antidiscrimination statutes and the antidiscrimination statutes of the State and City of New York.

40.     The CITY Defendants and Defendant HDC did manage, operate, fund, service, and otherwise govern the City's housing lottery system, through the website https://housingconnect.nyc.gov/PublicWeb/ (hereinafter "housing lottery website" or "lottery website").

41.     On the lotter website's "About NYC Housing Connect" section, the public and potential housing applicants are told the following:

NYC Housing Connect is your portal to find and apply for affordable housing opportunities in New York City.

## What is affordable housing?

Housing is considered affordable if it costs about one-third or less of what the people living there get in income.

The New York City Department of Housing Preservation and Development (HPD) and Housing Development Corporation (HDC) create affordable housing opportunities for many household income levels and sizes. The buildings are privately owned. HPD and HDC have a monitoring and oversight role.

There are rental and homeownership opportunities. Rentals are regulated so the rent can't go up too much over time. Condos, coops, and 1-4 family homes have restricted prices.

## How does Housing Connect work?

Through Housing Connect, you can find and apply for affordable rental and homeownership opportunities. To qualify, your household must meet the income and size requirements for a unit in the affordable development. Your household is all of the people who will live in the affordable unit.

There are two ways to access opportunities in Housing Connect. It is a good idea to do both:
 1. Apply to developments with open lotteries.
    These are new and recently renovated buildings.

2. Click "yes" that you wish to be considered for re-rentals/resales. This question is in the "Re-rentals and Resales" section.
These are individual affordable units that become available when someone moves out.

## JURISDICTION AND VENUE

42.     Plaintiff is entitled to protections within the meaning of the Fair Housing Act, 42 U.S.C.A. § 3604, *et seq.* ("FHA").

43.     The Defendant Landlord, MGNY, and the CITY Defendants, and Premises are all subject to the restrictions and mandates of the FHA at all relevant times pursuant to the Defendants' and Premises' incorporation and operation in the State of New York, and in the United States District Court, Southern District of New York.

44.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 42 U.S.C. § 3613, in that this is an action arising under the FHA.

45.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because the Landlord and Premises is located within this District and the State of New York. In addition, venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), because nearly all of the events giving rise to the claims occurred in this District.

46.     This Court has supplemental jurisdiction of the claim arising under the New York City Human Rights Law § 290 *et seq.* ("NYCHRL") and New York common law, pursuant to 28 U.S.C. § 1367, in that the New York State statutory and common law claims are so closely related to Plaintiff's FHA claims as to form the same case or controversy under Article III of the United States Constitution.

## PLAINTIFFS' FACTUAL ALLEGATIONS

47.     During all times relevant, Plaintiff wished to reside at the Premises, and to move into permanent and secure housing.

48.     Plaintiff approached the Landlord on or about October 31, 2022, via the website set up by the CITY Defendants and Defendant HDC to receive applications through the housing lottery, to rent an apartment located at the Premises. The Plaintiff advised that his rent would be subject to HASA payments covering the broker's fee, if applicable, as well as the first month's rent and a security deposit.

49.     On or about November 2022, Tenant was denied housing by the Landlord solely based on his desire to use his HASA voucher to pay for his rent. In fact, the Landlord explicitly stated to Mr. Wills that "HASA isn't available in this project".

50.     No further explanation was provided by the Landlord was denying housing to the Plaintiff, despite Plaintiff being financially qualified to rent the premises and clearing a credit check.

51.     Then, in November 2022 and December 2022, following an appeal, filed by the undersigned counsel, through the NYC HPD's Housing Lottery, the Tenant was again denied housing by the MGNY on behalf of the Landlord because Tenant stated his desire to use his HASA vouchers to pay for rent as opposed to utilities, despite there being no legal restrictions to the use of payments in such a manner.

52.     In late November 2022, counsel received a call in response to the appeal filed on behalf of Plaintiff, from an individual purporting to be a director at Defendant MGNY, who indicated they were acting "under a mandate from the City" and in accordance with the same.

53.     Counsel then reached out to Defendant MGNY, who responded in an email on December 8, 2022, that Plaintiff had until December 12, 2022 to show proper rental subsidy for both the rent and utilities, which he had previously done in his original application. The email was sent by Alex Chrisope of MGNY with the title "Affordable Housing Director."

54.     On December 12, 2022, Defendant MGNY sent the following email to Plaintiff:

Hi Anthony,

Please see the required income certification documents attached. There are several forms but they are very simple to complete, and only require signatures.

Please review all, sign and return. I've added specific instructions below for each form. You can sign these electronically, or they can be printed, signed, scanned and returned.

**<u>DEADLINE:</u>** These forms must be returned signed within 5 business days from the date of this email. If they are not returned within this time frame we will be unable to submit your file to HPD for approval.

1. Attachment R-5: Review the credit check options, and initial the **<u>one</u>** option you prefer. Then, sign and date at the bottom of the second page. **(Need signature from you)**

(NOTE 1: MGNY <u>does not charge any fee</u> for the background/credit check, or for tax return requests. Please ignore any references to fees)

(NOTE 2: If you choose to provide proof of rent payment please <u>provide them in your response with your signed documentation</u>. 12 months of payment records must be provided)

2. Attachment L-3 Tenant Income Certification: Please sign and date on the second page. **(Need signature from you)**

3. Attachment N-2: Review the statement and check both boxes. Sign and date. **(Need signature from you)**

Please don't hesitate to contact me with any questions.

Thank you,

Hannah



**Hannah Seitz | Affordable Housing Project Manager**

109 East 9th Street, Ground Floor, New York, NY 10003
**T:** 718-689-7495 | **F:** 718-522-1112

hannah@mgnyconsulting.com | www.mgnyconsulting.com

**\*Note our address has changed. The new address is:** 109 East 9th Street, Ground Floor.
New York, NY 10003

55.    On or about December 28, 2022, counsel for Plaintiff contacted Defendant MGNY concerning the status of Plaintiff's timely submitted supplementary documents for his client to receive final approval of renting and utilizing the Premises. Counsel had been involved in nearly all correspondences between Plaintiff and the Defendants, neither Plaintiff nor counsel were advised that Plaintiff satisfied the remaining requirements to obtain the Premises.

56.    On that same day, the Landlord and Marketing Agency fabricated additional requirements for Plaintiff's application to be approved to rent the Premises, including providing a credit check, as well as twelve months' proof of paid rent. Notably, neither of which are required in the New York City Human Rights Law. However, despite these requirements being created to further emotionally and mentally distress Plaintiff, and impede his ability to rent the apartment, the Plaintiff and his counsel complied with the requests for information and submitted the credit application on December 28, 2022.

57.    The credit check and income check were inappropriate and an illegal barrier to Plaintiff, as Defendants were aware that he was unemployed, had been living in transitional housing, and was a recipient of a HASA voucher that would cover the entirety of his rent, deposit, and the like.[3]

58.    Nonetheless, Defendant MGNY insisted to proceed with the illegal and unnecessary application procedures regarding Plaintiff's "income" despite counsel informing the same such actions

---

[3] See, Short v. Manhattan Apartments, Inc., (SDNY Case No. 11-cv-5989) Memorandum of Trial Decision, Dec. 3, 2012, reported as, 916 F. Supp. 2d 375 (SDNY 2012).

were inappropriate, inapplicable, and clearly designed to place barriers in front of Plaintiff on account of his income status and disability as a carrier of HIV. Again on December 28, 2022, Defendant MGNY, despite the  Plaintiff's years long financial position, sent the following email:

Hi Kevin,

Confirming receipt of the signed L-3.

We still have not received the full proof of rent payment history, including both parts A and B below, which was due yesterday. We can accept the complete proof or the applicant's consent to run the credit check by 5pm today.

A. Proof of the amount you are supposed to pay each month. Examples:

 - Lease

 - Notarized Affadavit from the building owner or manager

B. Proof of payment for the past 12 months. Examples:

 - Formal rent receipts

- Bank statements or other proof of monthly withdrawals/payments/transfers

- Money order receipts or copies

- Canceled checks

- Landlord's written record of payments (rent ledger)

Thanks,

Alex



**Alex Chrisope | Affordable Housing Director**
109 East 9th Street, Ground Floor, New York, NY 10003

**T:** (718) 689-7487 | **F:** (917) 633-4541
alex@mgnyconsulting.com | www.mgnyconsulting.com

59.     Counsel responded to inquiry how rental history and income could be applicable to Plaintiff considering his history of homelessness, unemployment, and reliance on the HASA voucher program. Defendant MGNY's response, through Alex Chrisope, was that "the rent payment history provided would be prior to shelter residency" or via the "credit check."

60.     On January 1, 2023, the Housing Connect website sent a notification to Plaintiff that indicated more documentation was necessary, including the following (despite being inapplicable and/or already submitted by Plaintiff): "(1) Applicants have the choice of either providing 12 months of complete rent payments or consenting to a credit review. If found eligible, you will be asked which option you would like to proceed with; (2) Copies of birth certificates for all minors in the household; (3) Copies of picture ID for all persons over 18 . . . ; (4) Copies of Social Security cards or Tax ID (TTIN) for each person in the household; (5) Current valid Section 8 transfer voucher or proof of other rental subsidy; (6) Most recent statements for any other deposit accounts, i.e. savings, money markets, e-banking such as Venmo/Cashapp/Paypal; (7) Social Security Award letter(s) for most recent calendar year (dated less than 120 days) OR Current or recent check stub including gross amount awarded; (8) Unemployment Payment History from NYS Department of Labor On Line System . . . ;"

61.     Counsel sent an email regarding these new requirements on January 1, 2023, indicating many did not apply and were not inline with the legal requirements applicable to Plaintiff. These merely presented an illegal barrier to Plaintiff.

62.     On January 4, 2023, Defendant MGNY, through Hannah Seitz, responded that "1) You are referencing a standard set of documents that [Defendant] HPD presents to all applicants . ."

63.     Nonetheless, in the same email, Defendant MGNY informed counsel and Plaintiff

that they would submit his file to Defendant HPD for approval, which would take 1-2 weeks.

64.    Plaintiff was informed of that the file had been approved by Defendant HPD on February 3, 2023 (a full month after the initial approval from Defendants Landlord and MGNY.

65.    However, Plaintiff was not immediately able to sign a lease nor move into his apartment.

66.    After weeks of silence, on February 28, 2023, Defendant MGNY, informed Plaintiff and counsel, that the NYC Human Resources Administration (hereinafter "HRA") had yet to approve Plaintiff's package. HRA is department within Defendant CITY and participates in the administration of the HASA vouchers.

67.    Thereafter, Plaintiff signed a lease that was to begin March 15, 2023. However, on March 14, 2023, Defendant MGNY once again informed Plaintiff and counsel that the CITY Defendants had no issued payment for the deposit and first month's rent and without such Plaintiff would not be allowed to move into the apartment until the aforesaid payments were received by Defendant Landlord.

68.    On March 20, 2023, the Defendant Landlord had not received the checks and Plaintiff and counsel were informed that the CITY Defendants, by way of Plaintiff's caseworker, Marvaline Ellis, had sent the payment to an incorrect address.

69.    Plaintiff had and continues to have difficulties with the CITY Defendants (via HRA) and his caseworker in particular, who does not return his calls and rarely answers hers. On March 20, 2023, counsel emailed and called Plaintiff's caseworker who was unhelpful and hung up on counsel. She then followed with an email falsely alleging that Plaintiff had not communicated with her at all.

70.    On or about March 23, 2023, Plaintiff received keys and was able to move into the apartment.

71.    Throughout this process, the Plaintiff suffered embarrassment and emotional distress

and anguish, coming close to giving up with the repeated barriers and illegal screening processes he was forced to go through. His caseworker was unresponsive and slow to help her client get out of temporary housing into the apartment he had every right to occupy. During the process, he was kept from applying to other lottery apartments, all the while having the uncertainty of the process with Defendants.

## CLASS ACTION ALLEGATIONS

*Class Definition*

72.    Plaintiff brings this action individually and as class representative individually and on behalf of all other HIV positive homeless residents of the City of New York, whether receiving vouchers and/or participating in the NYC Housing Lottery, who have been subject to the discriminatory practices and negligence of the aforesaid Defendants pursuit to Federal Rules of Civil Procedure ("FCRP") Rule 23 in the administering of housing vouchers and the Housing Lotttery. (Hereinafter "Class Members" collectively.)

73.    The class period commences, due to tolling, on the date two years prior to the date of the filing this Complaint and extends to the date on which the Defendants are enjoined from, or otherwise cease, their discriminatory and unlawful conduct, policies, and practices.

*The Class is Readily Ascertainable*

74.    The Class members are readily ascertainable from the Defendants records and the number and identity of the Class members are readily available as well.

*Numerosity*

75.    As outlined in prior paragraphs, the number of individuals that likely fall into the proposed Class is so numerous that it would be impractical for all Class members to bring suit separately or small groups of Plaintiff's. Such a number of individual suits could lead to conflicting

judicial findings and prejudice both Plaintiff, the Class Members, and the Defendants, who would have to Defendant countless numbers of lawsuits such as this.

76.     As detailed in the recitation of the statistics on those living with HIV, evidenced by the Defendants themselves, through their official websites and databases, the members of the class are so numerous as to render joinder impracticable and judicially inefficient.

*Commonality*

77.     The Class Members are threatened by common questions of law and facts, primarily have they been discriminated against in the housing system of the Defendant CITY and by private Landlords based upon the disability status (HIV positive) under the FHA and on account of the source of income (HASA vouchers) under the NYCHRL, et al. Furthermore, the Class Members are also facing the common issue of the procedures, practices, and policies of all named Defendants, but particularly CITY Defendants and Defendant HDC.

*Typicality*

78.     The Class Members, as homeless or in temporary housing and living with the stigma of an HIV diagnosis and the discrimination alleged in this Complaint is focused and centered on their status as Class Members, Plaintiff can show typicality amongst Class Members.

*Adequacy*

79.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs and Defendants in both class actions and discrimination-based actions.

*Predominance & Superiority*

80.     A Class Action in this case satisfies the requirements of predominance and superiority, in that the allegations as plead here predominate over any potential related claim of individual class

members. Class members are and it may be shown out by the Defendants own records would be and are particularly targeted because of their participation in the Housing Lottery, voucher system, and the public assistance available specifically for those living with HIV.

81.    A Class Action is superior to any other action, as it seeks jurisdiction-wide injunctive relief for the Defendants to cease all discriminatory conduct and policies, negligent training and hiring process, and ensures that the entirety of potential known class members will potentially benefit from this single action. The Class Members do not always have the means and capabilities to bring individual lawsuits, living at the margins of society were concerns rest on survival from day to day.

## AS FOR THE FIRST CAUSE OF ACTION
*(Against All Defendants Fair Housing Act: 42 U.S.C. § 3604(c))*

82.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

83.    Plaintiff is a person with a "handicap" (hereinafter to be "disability") within the meaning of the Fair Housing Act ("FHA") 42 U.S.C. § 3602(h).

84.    Under the FHA it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

85.    Defendants Landlord and MGNY and CITY Defendants violated the above by making statements and causing statements to be made to Plaintiff with respect to the rental of the Premises and the application and screening process through the NYC Housing Lottery.

86.    The conduct of all Defendants was willful, intentional, and in reckless disregard of Plaintiff's civil rights.

87.    Plaintiff is aggrieved persons as defined by the FHA, 42 U.S.C. §3602(i) and as a direct

and proximate result of the Defendants' unlawful and discriminatory conduct has sustained damages.

88.     Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under 42 U.S.C. §2613(c).

## AS FOR THE SECOND CAUSE OF ACTION
*(Against All Defendants Fair Housing Act: 42 U.S.C. § 3604(d))*

89.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

90.     The FHA provides that it is illegal and discriminatory to "represent to any person . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available" because of disability. 42 U.S.C. § 3604(d). This provision includes "limiting information, by word or conduct, regarding the suitably priced dwellings available for inspection, sale, or rental" because of disability. 28 C.F.R. Part 100.80(b)(4).

91.     Defendants violated this provision in indicating that the Premises was not available for individuals receiving "HASA vouchers."

92.     Defendants' conduct was willful, intentional, and in reckless disregard of the Plaintiff's civil rights.

93.     Plaintiff is aggrieved persons as defined by the FHA, 42 U.S.C. §3602(i) and as a direct and proximate result of the Defendants' unlawful and discriminatory conduct has sustained damages.

94.     Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under 42 U.S.C. §2613(c).

## AS FOR THE THIRD CAUSE OF ACTION
*(Against All Defendants Fair Housing Act: 42 U.S.C. § 3604(f)(1))*

95.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

96.    The FHA provides that it is unlawful to "discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter" because of disability. 42 U.S.C. § 3604(f)(1).

97.    Defendants discriminated against Plaintiff in violation of this statute by denying his initial lottery application based upon his "HASA voucher" and by  further impeding his ability to continue and follow through with the housing application process, and providing inadequate instructions and protocols for Plaintiff.

98.    Defendants' conduct was willful, intentional, and in reckless disregard of the Plaintiff's civil rights.

99.    Plaintiff is aggrieved persons as defined by the FHA, 42 U.S.C. §3602(i) and as a direct and proximate result of the Defendants' unlawful and discriminatory conduct has sustained damages.

100.    Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under 42 U.S.C. §2613(c).


## AS FOR THE FOURTH CAUSE OF ACTION
*(Against All Defendants Fair Housing Act: 42 U.S.C. § 3604(f)(2))*

101.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

102.    The FHA provides that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because of disability. 42 U.S.C. § 3604(f)(2).

103.    As in the aforesaid, Defendants uniformly and consistently discriminated against

Plaintiff.

104.    Defendants' conduct was willful, intentional, and in reckless disregard of the Plaintiff's civil rights.

105.    Plaintiff is aggrieved persons as defined by the FHA, 42 U.S.C. §3602(i) and as a direct and proximate result of the Defendants' unlawful and discriminatory conduct has sustained damages.

106.    Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs under 42 U.S.C. §2613(c).

## AS FOR THE FIFTH CAUSE OF ACTION
*(Discrimination by Defendant Cezar H LLC under the NYCHRL)*

107.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

108.    At all relevant times, Defendant CEZAR H LLC was subject to the provisions of Article 15 of NYCHRL.

109.    Pursuant to § 296(2)(2-a), it is unlawful to discriminate against someone based on their income. This discrimination extends to "refus[al] to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations" based on their "lawful source of income." See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022).

110.    Moreover, § 296(18)(2), makes it unlawful for a landlord to rent to someone based on protected characteristics. See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022); see also N.Y.C.H.R.L. § 296(18)(2) (McKinney's, 2022) (discussing reasonable accommodations).

111.    Defendant CEZAR H LLC violated these sections of the NYCHRL through its refusal to accept Plaintiff's HASA voucher as payment for the apartment.

112.    At no time did or have the Landlord put forth another reason for refusing housing to the Plaintiff.

113.    The Landlord willfully, knowingly, and intentionally denied a living space to Plaintiff through refusing to accept legally valid HASA vouchers, as well as because of Plaintiff's HIV status.

114.    Landlord did not make a good faith effort to comply with the NYCHRL with respect to the Plaintiff's source of income, or his HIV status.

115.    Due to the Landlord's intentional and willful refusal to accept Plaintiff's rental payment with HASA vouchers, and discriminated against plaintiff based on his health status, Plaintiff is entitled to economic damages to be determined at the time of trial.

## AS FOR THE SIXTH CAUSE OF ACTION
*(Discrimination by Cezar H LLC under the FHA)*

116.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

117.    At all relevant times, Defendant CEZAR H LLC was subject to provisions set forth in the Title 42, Section 3604 of the United States Code, known colloquially as the "Fair Housing Act".

118.    The FHA provides that "it shall be unlawful… [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of…that…renter…" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of…that person." 42 U.S.C.A. § 3604(f)(1) and (2).

119.    Defendant CEZAR H LLC refused to rent a living space to rent a living space to Plaintiff solely because of his HIV status, and desire to pay for rent with HASA vouchers.

120.    At no time did the Landlord put forth another legally valid reason for refusing housing to the Plaintiff.

121.    Defendant CEZAR H LLC willfully, knowingly, and intentionally did not enter into a contract to provide a living space to the Plaintiff because of his HIV status.

122.     As a result of the Landlord's violations of the law resulted in Plaintiff being unable to secure housing, Plaintiff has been damaged and are entitled to recover from Defendants damages, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

123.     As Defendant CEZAR H LLC did not have a good faith basis to deny Plaintiff housing, Plaintiff is entitled to additional damages equal to one hundred percent of the total amount of damages, pursuant to 29 U.S.C. § 216(b).

## AS FOR THE SEVENTH CAUSE OF ACTION
*(Discrimination by Defendant MGNY Consulting Corp. under the NYCHRL)*

124.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

125.     At all relevant times, Defendant MGNY Consulting Corp. was subject to the provisions of Article 15 of NYCHRL.

126.     Pursuant to § 296(2)(2-a), it is unlawful to discriminate against someone based on their income. This discrimination extends to "refus[al] to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations" based on their "lawful source of income." See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022).

127.     Moreover, § 296(18)(2), makes it unlawful for a landlord to rent to someone based on protected characteristics. See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022); see also N.Y.C.H.R.L. § 296(18)(2) (McKinney's, 2022) (discussing reasonable accommodations).

128.     Defendant MGNY Consulting Corp. violated these sections of the NYCHRL through its refusal to accept Plaintiff's HASA voucher as payment for the apartment.

129.     At no time did or have the MGNY put forth another reason for refusing housing to the Plaintiff.

130.     The MGNY willfully, knowingly, and intentionally denied a living space to Plaintiff

through refusing to accept legally valid HASA vouchers, as well as because of Plaintiff's HIV status.

131.    The MGNY did not make a good faith effort to comply with the NYCHRL with respect to the Plaintiff's source of income, or his HIV status.

132.    Due to the MGNY's intentional and willful refusal to accept Plaintiff's rental payment with HASA vouchers, and discriminated against plaintiff based on his health status, Plaintiff is entitled to economic damages to be determined at the time of trial.

## AS AND FOR THE EIGHTH CAUSE OF ACTION
*(Discrimination by MGNY Consulting Corp. under the FHA)*

133.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

134.    At all relevant times, Defendant MGNY Consulting Corp. was subject to provisions set forth in the Title 42, Section 3604 of the United States Code, known colloquially as the "Fair Housing Act".

135.    The FHA provides that "it shall be unlawful… [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of…that…renter…" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of…that person." 42 U.S.C.A. § 3604(f)(1) and (2).

136.    Defendant MGNY Consulting Corp. refused to rent a living space to rent a living space to Plaintiff solely because of his HIV status, and desire to pay for rent with HASA vouchers.

137.    At no time did the MGNY put forth another legally valid reason for refusing housing to the Plaintiff.

138.    Defendant MGNY Consulting Corp. willfully, knowingly, and intentionally did not enter into a contract to provide a living space to the Plaintiff because of his HIV status.

139.    As a result of the MGNY's violations of the law resulted in Plaintiff being unable to secure housing, Plaintiff has been damaged and are entitled to recover from Defendants damages, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

140.    As Defendant MGNY Consulting Corp. did not have a good faith basis to deny Plaintiff housing, Plaintiff is entitled to additional damages equal to one hundred percent of the total amount of damages, pursuant to 29 U.S.C. § 216(b).

## AS FOR THE NINTH CAUSE OF ACTION
*(Discrimination by City Defendants & Defendant HDC under the NYCHRL)*

141.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

142.    At all relevant times, Defendant NYC HPD was subject to the provisions of Article 15 of NYCHRL.

143.    Pursuant to § 296(2)(2-a), it is unlawful to discriminate against someone based on their income. This discrimination extends to "refus[al] to sell, rent or lease or otherwise to deny to or withhold from any person or group of persons such housing accommodations" based on their "lawful source of income." See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022).

144.    Moreover, § 296(18)(2), makes it unlawful for a landlord to rent to someone based on protected characteristics. See N.Y.C.H.R.L. § 296(2)(2-a) (McKinney's, 2022); see also N.Y.C.H.R.L. § 296(18)(2) (McKinney's, 2022) (discussing reasonable accommodations).

145.    Defendant NYC HPD violated these sections of the NYCHRL through Defendant MGNY Consulting Corp.'s its refusal to accept Plaintiff's HASA voucher as payment for the apartment, as the Marketing Agency explicitly provided it was acting on instruction of the NYC HPD.

146.    At no time did or have the NYC HPD, with MGNY Consulting Corp. acting on its behalf, put forth another reason for refusing housing to the Plaintiff other than that it was following guidelines drafted and upheld by the NYC HPD.

147.    The NYC HPD, through the Marketing Agency willfully, knowingly, and intentionally denied a living space to Plaintiff through refusing to accept legally valid HASA vouchers, as well as because of Plaintiff's HIV status.

148.    The NYC HPD did not make a good faith effort to comply with the NYCHRL with respect to the Plaintiff's source of income, or his HIV status.

149.    Due to the NYC HPD's intentional and willful refusal to accept Plaintiff's rental payment with HASA vouchers, and discriminated against plaintiff based on his health status, Plaintiff is entitled to economic damages to be determined at the time of trial.

## AS FOR THE TENTH CAUSE OF ACTION
### *(Discrimination by City Defendants & Defendant HDC under the FHA)*

150.    Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

151.    At all relevant times, City Defendants and Defendant HDC were subject to provisions set forth in the Title 42, Section 3604 of the United States Code, known colloquially as the "Fair Housing Act".

152.    The FHA provides that "it shall be unlawful… [t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of…that…renter…" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of…that person." 42 U.S.C.A. § 3604(f)(1) and (2).

153.     Said Defendants, through MGNY Consulting Corp., refused to rent a living space to rent a living space to Plaintiff solely because of his HIV status, and desire to pay for rent with HASA vouchers.

154.     At no time did the MGNY, on behalf of NYC HPD, put forth another legally valid reason for refusing housing to the Plaintiff.

155.     Defendant NYC HPD, through MGNY Consulting Corp. willfully, knowingly, and intentionally did not enter into a contract to provide a living space to the Plaintiff because of his HIV status.

156.     As a result of the NYC HPD's violations of the law resulted in Plaintiff being unable to secure housing, Plaintiff has been damaged and are entitled to recover from Defendants damages, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216(b).

157.     As Defendant NYC HPD did not have a good faith basis to deny Plaintiff housing, Plaintiff is entitled to additional damages equal to one hundred percent of the total amount of damages, pursuant to 29 U.S.C. § 216(b).


### AS FOR THE ELEVENTH CAUSE OF ACTION
*(Negligent Hiring, Training, & Retention under NYS Common Law as Against All Defendants)*

158.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

159.     At all relevant times all Defendants were responsible and held a duty to Plaintiff to retain, train, and hire competent individuals who, with the use of reasonable care and diligence, should have not been or have been participating and executing the mandates and orders of the corporate  and institutional Defendants.

160.     At all relevant times, agents, employees, assigns, representatives, and administrators of

the Defendants acted and did act in a discriminatory fashion to the Plaintiff and those similarly situated.

161.    The willful, intentional, and reckless conduct toward Plaintiff was an actual and proximate cause of the negligence, gross negligence, and recklessness of Defendants in the screening, hiring, training, disciplining, and retention of the individual agents and employees of Defendants, specifically mentioned herein by name in addition to those which Plaintiff suspects, but does not have knowledge of, additional individuals acting under the authority and with permission and knowledge of the Defendants and their agents, assigns, and representatives.

162.    As an actual and proximate cause, Defendants breach of this duty resulted in Plaintiff being unable to secure housing, Plaintiff has been damaged and are entitled to recover from Defendants damages, along with all reasonable attorney fees, interest, and costs, pursuant to New York law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial pursuant to FRCP 38 on all claims so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff and Plaintiff class respectfully request Judgment on all causes of action against Defendants as stated below:

1)    Declaring that Defendants' discriminatory practices, policies, procedures, training, hiring, and retention policies violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.* and the New York City Human Rights Law, New York Administrative Code, § 8-107 *et seq.*;

2) Enjoining Defendants, Defendants' agents, employees, developers, contractors, marketing agents, management agents, administrators of the NYC Housing Lottery, representatives, and all other person in active concert or participation from the date of Judgement:

    a) Denying or withholding housing, or otherwise making rental apartments unavailable on the basis of disability, lawful source of income, or the intersection of both, including in the marketing and management of such housing and screening processes, both within the context of and outside of the NYC Housing Lottery;

    b) Representing that any housing facility or those marketing and managing said facility do not or cannot accept housing vouchers based upon a disability, lawful source of income, or the intersection of both, when in fact such housing is lawfully available;

    c) Discriminating in the terms or conditions of rental because of disability, lawful source of income, or the intersection of both, including the imposition of more onerous conditions and screening processes in any stage of the marketing, managing, or administration of such housing and specifically the NYC Housing Lottery (including providing credit and financial checks in the event the source of income provides for all rents and the like, duplicitous application forms and processes, and any other screening process that would tend to exclude individuals and have a disparate impact on individuals with disabilities, because of a lawful source of income, or the intersection of both);

    d) Making any record, inquiry, or statement in connection with housing generally and the NYC Housing Lottery specifically that expresses, directly or indirectly, any limitation, specification or discrimination as to disability, lawful source of income, or the intersection of both;

e) Making, printing, or publishing any statement with respect to the rental of housing that indicates any preference, limitation, or discrimination on the basis of disability, lawful source of income, or the intersection of both;

3) Enjoining Defendants, Defendants' agents, employees, developers, contractors, marketing agents, management agents, administrators of the NYC Housing Lottery, representatives, and all other person in active concert or participation from the date of Judgment to:

a) Make all necessary modifications to their policies, procedures, practices, hiring & training methods, and screening of developers, landlords, marketing firms, management firms, and all others so involved in the housing offered by the NYC Housing Lottery or to those individuals and entities tasked with administering the same or administering HASA vouchers;

b) Train all developers, landlords, marketing firms, management firms, managers, caseworkers, executives and all others so involved in the housing offered by the NYC Housing Lottery or to those individuals and entities tasked with administering the same or administering HASA vouchers on all applicable fair housing laws;

c) Display a statement or position on the NYC Housing Lottery website and Defendants' respective websites espousing an that the housing offered is "Equal Opportunity" and placing the same in the physical offices of all developers, landlords, marketing firms, management firms, managers, caseworkers, executives and all others so involved in the housing offered by the NYC Housing Lottery or to those individuals and entities tasked with administering the same or administering HASA voucher;

d) Institute auditing and monitoring processes and procedures, with properly trained individuals, for the purposes of ensuring compliance with the applicable fair housing laws by all developers, landlords, marketing firms, management firms, managers, caseworkers,

executives and all others so involved in the housing offered by the NYC Housing Lottery or to those individuals and entities tasked with administering the same or administering HASA vouchers;

e) Retain a records and produce a public database of all those individuals with HASA vouchers who are not selected or otherwise denied housing withing the NYC Housing Lottery system, to be published not less than quarterly in a year;

4) Awarding such damages to Plaintiff and Plaintiff class as will fully compensate him for any economic loss, loss of rights, and for the humiliation, embarrassment, mental anguish, and emotional distress suffered as a direct result of the Defendants' discriminatory conduct;

5) Awarding punitive damages to Plaintiff and Plaintiff class as such will deter the Defendants from such discriminatory conduct in the future;

6) Awarding Plaintiff and Plaintiff class reasonable attorneys' fees, costs, and expenses incurred in the prosecution of this action; and,

7) Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        June 8, 2023

HAMRA LAW GROUP, P.C.

*Kevin S. Johnson*

By:     Kevin S. Johnson, Esq.
*Attorneys for Plaintiff*
ANTHONY WILLS, JR. *on behalf of himself and others similarly situated*
1 Linden Place, Suite 207
Great Neck, New York 11021
(646) 590 – 0571
kjohnson@hamralawgroup.com